BRYAN SCHRODER
Acting United States Attorney
RICHARD POMEROY
Assistant United States Attorney
Chief, Civil Division

CHAD A. READLER
Acting Assistant Attorney General
R. MICHAEL UNDERHILL
Attorney in Charge, West Coast Office
Torts Branch, Civil Division
ERIC KAUFMAN-COHEN
Assistant Attorney in Charge, West Coast Office
Torts Branch, Civil Division
U.S. Department of Justice
P.O. Box 36028
450 Golden Gate Avenue, Room 7-5395
San Francisco, California 94102-3463
Telephone: (415) 436-6647
Facsimile: (415) 436-6632
E-mail: eric.kaufman-cohen@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No.: |
| ) | |
| Plaintiff, ) | IN ADMIRALTY |
| ) | |
| vs. ) | |
| ) | |
| KLAWOCK OCEANSIDE, INC., ) | VERIFIED COMPLAINT |
| LAURANCE E. LANG, an individual, and ) | |
| SAFE HARBOR POLLUTION INSURANCE ) | |
| GROUP, *in personam,* ) | |
| ) | |
| Defendants. ) | |

VERIFIED COMPLAINT     1     Case No.:

Plaintiff, the United States of America, alleges upon information and belief as follows:

**GENERAL ALLEGATIONS**

1. This is a case of admiralty and maritime jurisdiction against Defendants KLAWOCK OCEANSIDE, INC., LAURANCE E. LANG, an individual, and SAFE HARBOR POLLUTION INSURANCE GROUP, *in personam*, as hereinafter more fully appears, and within Rule 9(h) of the Federal Rules of Civil Procedure.

2. The United States is authorized to bring this suit pursuant to 28 U.S.C. § 1345, 33 U.S.C. §§ 1321 and 2717.

3. Venue is properly in this Court pursuant to 28 U.S.C. §§ 1391 and 33 U.S.C. § 2717.

4. The United States also brings this action on behalf of the Oil Spill Liability Trust Fund ("Fund"), pursuant to the Oil Pollution Act of 1990, 33 U.S.C. § 2701 *et seq.*, to recover any and all removal costs and damages incurred directly by the Fund, any removal costs and damages incurred by the Fund through compensation paid to any claimant, and all costs incurred by the Fund by reason of any such claims, including interest, prejudgment interest, adjudicative costs, and attorney's fees. Pursuant to the Oil Pollution Act of 1990, 33 U.S.C. § 2712(f), the United States has acquired by subrogation, or may in the future acquire by subrogation, the rights of any claimant or State paid compensation from the Fund, and the United States specifically reserves the right to amend this Verified Complaint to assert any or all such subrogated rights and claims.

5. At all times material herein, the M/V AKUTAN was a vessel, *inter alia*, owned and operated in the United States and at all times material herein was within the jurisdiction of this Court.

6. Defendant KLAWOCK OCEANSIDE, INC. ("KLAWOCK"), pursuant to information or belief, is an Alaskan company incorporated under the laws of the State of Alaska. At all material times KLAWOCK had a place of business within this district and within the jurisdiction of this Court, including, but not limited to, through ownership and operation of the M/V AKUTAN at the time of, and with respect to, the matters sued upon herein.

7. At all times material herein, defendant KLAWOCK owned the M/V AKUTAN.

8. At all times material herein, defendant KLAWOCK operated the M/V AKUTAN.

9. At all times material herein, defendant KLAWOCK managed the M/V AKUTAN.

10. At all times material herein, defendant KLAWOCK demise chartered the M/V AKUTAN.

11. At all times material herein, defendant KLAWOCK controlled the M/V AKUTAN.

12. At all times material herein, and by reason of the matters alleged in this Complaint, defendant KLAWOCK is a "responsible party" within the meaning of the Oil Pollution Act of 1990, 33 U.S.C. § 2701, *et seq*.

13. At all times material herein, defendant LAURANCE E. LANG ("LANG") owned the M/V AKUTAN.

14. At all times material herein, defendant LANG operated the M/V AKUTAN.

15. At all times material herein, defendant LANG managed the M/V AKUTAN.

16. At all times material herein, defendant LANG demise chartered the M/V AKUTAN.

17. At all times material herein, defendant LANG controlled the M/V AKUTAN.

18. At all times material herein, and by reason of the matters alleged in this Complaint,

defendant LANG is a "responsible party" within the meaning of the Oil Pollution Act of 1990, 33 U.S.C. § 2701, *et seq*.

19. At all material times the M/V AKUTAN was a vessel within the meaning of, *inter alia*, OPA, 33 U.S.C. § 2701(37).

20. At all times material herein, Defendant SAFE HARBOR POLLUTION INSURANCE ("SAFE HARBOR") was and is part of the Falvey Insurance Group, which is headquartered in North Kingstown, Rhode Island, and did, and continues to do, business in the State of Alaska and within this district and within the jurisdiction of this Court, including, but not limited to, by insuring and/or providing evidence of financial responsibility and certain guarantees pertaining to marine oil pollution liabilities incurred by or through the AKUTAN.

21. SAFE HARBOR provided evidence of financial responsibility and certain guarantees pertaining to the AKUTAN pursuant to statute and regulations; accordingly, pursuant to those statutes and regulations, and up to the monetary limits of its statutory and regulatory liability, the United States of America is entitled to bring its claims directly against said guarantor.

22. At all times material herein, defendants KLAWOCK and LANG, in addition to defendant SAFE HARBOR, the latter up to the monetary limits of its statutory and regulatory liability, were agents of each other and are therefore responsible and liable, jointly and severally, for all of each of the others' obligations, acts, omissions, and strict liability with respect to the matters alleged in this Complaint and action.

## **VESSEL HISTORY AND OPERATION**

23. The AKUTAN was a steel-hulled, twin diesel powered fish-freezer processor built in 1944. The vessel was 166.5 feet long and weighed 746 gross tons. Defendant LANG purchased the vessel on March 27, 2012. Thereafter, Mr. Lang sold the vessel to defendant KLAWOCK.

VERIFIED COMPLAINT 4 Case No.:

24. Defendant LANG was and remains *inter alia*, an owner of defendant KLAWOCK, and was and remains a director, president and shareholder of defendant KLAWOCK.

25. Over the course of its operation the vessel was in the business of commercial fishing and fish/freezer processing. The vessel's main deck was used for fish processing, and below deck was a freezer hold cargo storage. For the 2017 fishing season the AKUTAN was hired by a fleet of fishing vessels operated by Bristol Bay Seafoods, LLC to process 100,000 pounds of fish per day.

26. Defendant SAFE HARBOR served as the vessel's guarantor under the requirements of the Oil Pollution Act of 1990, and issued a written guaranty to the United States Coast Guard, National Pollution Funds Center with an effective date of April 1, 2017.

## INCIDENT AND REMOVAL ACTION

27. On or about August 5, 2017, the AKUTAN departed Dillingham, Alaska, carrying approximately 130,000 pounds of processed fish in its freezer hold, en route Seattle, Washington, with a crew of seven.

28. At some point during the voyage the vessel began to experience mechanical problems with her portside engine, forcing her to reroute to Dutch Harbor for repairs. Prior to entering Captain's Bay the crew of the Coast Guard Cutter MIDGETT conducted a boarding and safely inspection of the vessel.

29. Upon boarding the vessel the Coast Guard inspectors observed numerous problems, including a sheared off engine crank shaft on the portside engine and ammonia leaks in the vessel. Given the ongoing safety concerns and the vessel's captain's request, the MIDGETT escorted the vessel into Dutch Harbor, Alaska.

VERIFIED COMPLAINT 5 Case No.:

Case 3:18-cv-00136-SLG Document 1 Filed 06/12/18 Page 5 of 17

30. On August 9, 2017, a marine surveyor was retained by the vessel interests to conduct an assessment of the vessel to determine whether she could be towed to Seattle in order that the crew could sell her cargo of fish at a higher price. The survey revealed several problems with the vessel's integrity that would prevent her from making the lengthy tow to Seattle. In addition to the sheared off crank shaft identified by the Coast Guard inspectors, the surveyor found that only one of the vessel's generators was operable. Moreover, ammonia continued to leak from the vessel's compressor and freezer systems. Most significantly of all was the surveyor's concern regarding the watertight integrity of the starboard engine's sea chest, which showed signs of material degradation to pipes and valves and a patchwork of temporary repairs.

31. Based on the problems noted by the crew of the MIDGITT during their safety inspection of the vessel, and the marine survey report, the Coast Guard Federal on Scene Coordinator's ("FOSC") Representative determined that the vessel posed a substantial threat of discharges of oil into the navigable waters of the United States in and around Captain's Bay, Unalaska, Alaska.

32. Thereafter, the FOSC's Representative established a Unified Command comprised of both federal, State, and local stakeholders and opened a federal project so that funds to remediate the substantial threat of discharge could be obtained from the Fund should the need arise.

33. On August 13, 2017, personnel from the Coast Guard, the Alaska Department of Environmental Conservation, Resolve Salvage and Towing, and a marine chemist boarded the vessel to evaluate the situation. Their investigation confirmed that the vessel posed a substantial threat of oil pollution discharge into the waters of Captain's Bay, and that the vessel was in danger of sinking.

34. The investigators determined, based upon an estimate of remaining fuel that the single operating generator that powered the bilge pumps that kept the vessel afloat, would run out of fuel within three days.

35. The vessel was carrying approximately 40,000 gallons of fuel and oily waste water, much of it filling the bilges and slop tanks, which severely hampered the vessel's ability to pump water and maintain stability. Of more concern was the fact that the vessel was taking on significant amounts of water through a cracked propeller shaft, thereby threatening to overwhelm the already overworked bilge pumps.

36. The FOSC's Representative hired Resolve Marine to remove the fuel and oily waste water from the vessel's overflow tanks. Beginning on August 18, and continuing through the 22nd, Resolve removed approximately 15,800 gallons of fuel and oily waste water from the vessel's bilges and slop tanks, leaving an estimated 23,340 gallons onboard. At the same time, the Alaska Department of Labor prohibited the off-loading of the vessel's cargo of fish, and ordered that the vessel remain anchored within Captain's Bay due to the crew's claims for wages owed.

37. During the response efforts, defendant SAFE HARBOR made several overtures to the FOSC's Representative suggesting that it would take over the response efforts from the Unified Command as it had a financial interest in the vessel and that it preferred to handle the response directly. However, SAFE HARBOR did not follow through on its offer to take over the response, and as a result, the FOSC's Representative continued to supervise the federal response.

38. During this time, the various vessel interests represented to the FOSC's Representative that they were actively undertaking efforts to remove the vessel from the waters of Alaska by finding buyers for the vessel. They represented to the FOSC's Representative that finding a buyer for the vessel would not be a problem.

39. Because the captain and crew remained aboard the vessel during and after the foregoing events, and relying on the representations of the vessel's interests that efforts were being made to pay the crew and find a buyer that would remove the vessel from the waters of Alaska, as well as the fact that the efforts to stem the intake of water through the vessel's cracked propeller shaft were successful, the FOSC's Representative agreed to leave the remaining fuel aboard the vessel, approximately 23,340 gallons, so that the vessel's refrigeration system and critical power systems, most notably the vessel's bilge pumps, would remain operable.

40. Despite the foregoing representations of the vessel interests, problems with the vessel continued. On September 1, 2017, the vessel's 130,000 pounds of fish cargo was offloaded and found to be contaminated. At this point the vessel interests abandoned the vessel, apparently because the vessel was no longer of value to them without a merchantable cargo.

41. During the night of October 4, 2017, and early hours of October 5th, Captain's Bay experienced high winds. Although such windy conditions are not unusual for Captain's Bay, the wind caused the vessel to drag anchor a half mile, coming to rest 200 feet from shore. On October 5th the FOSC's Representative determined that the abandoned vessel posed a substantial threat of discharge of oil into the waters in and around Captain's Bay. The FOSC Representative retained the services of Resolve Marine to deploy booms around the vessel to contain any potential discharge of pollutants, and formulate a plan to remove the remaining fuel and oily water.

42. On August 10, 2017, the FOSC's Representative issued a Notice of Federal Interest ("NOFI") to defendant LANG, identifying the vessel as a substantial threat of oil pollution discharge. Defendant LANG did not respond. Thereafter, having received no response from defendant LANG to the NOFI, the FOSC's Representative issued a Notice of Federal Assumption and an Administrative Order requiring that defendant LANG submit a plan of action to remediate

VERIFIED COMPLAINT 8 Case No.:

the substantial threat of discharge from the AKUTAN. Defendant LANG did not respond to the FOSC's Representative's Order.

43. Having received no response from defendant LANG to the FOSC's Representative's NOFI, as well as the Notice of Federal Assumption and Administrative Order, the NPFC issued defendant LANG a Notice of Potential Responsibility.

44. Because defendants herein failed to take action to respond to the potential threat of discharge the vessel presented as ordered by the FOSC's Representative, the United States Coast Guard took action to remediate the situation. The measures taken by the Coast Guard included the offloading of all remaining fuel and oily water from the vessel, and ultimately towing the vessel out to sea and sinking her.

45. To date, the costs incurred by the Coast Guard to alleviate the substantial threat of discharge of fuel and oily water from the vessel into the waters of Captain's Bay is no less than $1,463,392, paid to outside contractors. This figure does not include the costs related to the response costs incurred by the Coast Guard, such as the use of Coast Guard personnel and equipment. These costs will increase the total costs incurred by the United States in responding to the substantial threat of discharge of fuel and oily water from the vessel. All such costs shall be established according to proof at trial.

46. The United States reserves the right to amend this Complaint to assert additional causes of action and/or to add additional parties following initiation of discovery

//

//

//

# AS AND FOR A FIRST CAUSE OF ACTION AGAINST

# KLAWOCK OCEANSIDE, INC., LAURANCE E. LANG and

# SAFE HARBOR POLLUTION INSURANCE GROUP

# (OIL POLLUTION ACT OF 1990)

47. Plaintiff, United States of America, refers to and incorporates by reference as though fully set forth herein each and every foregoing paragraph of this Complaint.

48. Pursuant to the Oil Pollution Act of 1990, each responsible party for a vessel from which oil is discharged, or which poses the substantial threat of discharge, into or upon the navigable waters or adjoining shorelines or the exclusive economic zone of the United States, is strictly liable for all costs, damages, and/or disbursements specified in the Act.

49. Under the circumstances herein, defendants KLAWOCK OCEANSIDE, INC., LAURANCE E. LANG and SAFE HARBOR POLLUTION INSURANCE GROUP, the latter up to and including the amount of its guarantee, are liable to the United States of America for all such costs, damages, interest, and/or disbursements, in addition to statutory attorneys' fees allowed under OPA, as a result of the matters alleged herein.

# AS AND FOR A SECOND CAUSE OF ACTION AGAINST

# KLAWOCK OCEANSIDE, INC., LAURANCE E. LANG and

# SAFE HARBOR POLLUTION INSURANCE GROUP

# (OIL POLLUTION ACT OF 1990)

50. Plaintiff, United States of America, refers to and incorporates by reference as though fully set forth herein each and every foregoing paragraph of this Complaint.

51. Pursuant to the Oil Pollution Act of 1990, the Fund shall be subrogated to all rights, claims and causes of action of claimants to whom it has paid compensation.

52. As a result of the OPA Incidents described herein, the Fund may incur costs, damages, and/or disbursements by reason of claims for removal costs and damages brought against it under the Oil Pollution Act of 1990.

53. Pursuant to the Oil Pollution Act, KLAWOCK OCEANSIDE, INC., LAURANCE E. LANG and SAFE HARBOR POLLUTION INSURANCE GROUP, the latter up to and including the amount of its guarantee, are liable to the United States of America for all such costs, damages, and/or disbursements which may be sustained by the Fund, in addition to statutory attorneys' fees allowed under OPA, as a result of the matters alleged herein..

**AS AND FOR A THIRD CAUSE OF ACTION AGAINST**

**KLAWOCK OCEANSIDE, INC., LAURANCE E. LANG and**

**SAFE HARBOR POLLUTION INSURANCE GROUP**

**(OIL POLLUTION ACT OF 1990)**

54. Plaintiff, United States of America, refers to and incorporates by reference as though fully set forth herein each and every foregoing paragraph of this Complaint.

55. Pursuant to the Oil Pollution Act of 1990, 33 U.S.C. § 2717(f)(2), the United States is entitled to, and hereby seeks, a declaratory judgment that is binding in any subsequent action or actions against defendants KLAWOCK OCEANSIDE, INC., LAURANCE E. LANG and SAFE HARBOR POLLUTION INSURANCE GROUP that said defendants are liable for removal costs and damages in any such subsequent action or actions.

//

# AS AND FOR A FOURTH CAUSE OF ACTION AGAINST

# KLAWOCK OCEANSIDE, INC. and LAURANCE E. LANG

# (28 U.S.C. § 3001, *et seq*.)

56. Plaintiff, United States of America, refers to and incorporates by reference as though fully set forth herein each and every foregoing paragraph of this Complaint.

57. Despite the liability, including strict liability, of defendants to the United States, all as alleged in this verified Complaint, on information and belief defendants KLAWOCK OCEANSIDE, INC. and LAURANCE E. LANG in breach of law, including, but not limited to, in violation of the provisions of the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001 et seq., have, inter alia, instead of discharging debts owed to the United States, transferred, sold, spun off, and assigned assets so as to prejudice and cause irreparable harm to the United States.

58. Despite the liability, including strict liability, of defendants to the United States, all as alleged in this verified Complaint, on information and belief defendants KLAWOCK OCEANSIDE, INC. and LAURANCE E. LANG, in breach of law, may hereafter transfer, sell, spin off, and assign, or attempt to transfer, sell, spin off, and assign their assets, including real property, so as to prejudice and cause irreparable harm to the United States.

59. All such prior and future actions as alleged in the foregoing paragraphs have caused damages, and will cause damages, to the United States in an amount to be established according to proof at trial.

60. All such future actions as alleged in the foregoing paragraphs will continue to cause irreparable harm to the United States. As a result of the foregoing, defendants KLAWOCK OCEANSIDE, INC. and LAURANCE E. LANG shall, pursuant to law and statute, be enjoined from further transferring, selling, spinning off, and assigning, or attempting to transfer, sell, spin

off, and assign, their assets, including real property, so as to prejudice and cause irreparable harm to the United States.

## AS AND FOR A FIFTH CAUSE OF ACTION AGAINST

## KLAWOCK OCEANSIDE, INC. and LAURANCE E. LANG

## (PRIORITY OF GOVERNMENT CLAIMS, 31 U.S.C. § 3713)

61.     Plaintiff, United States of America, refers to and incorporates by reference as though fully set forth herein each and every foregoing paragraph of this Complaint.

62.     Despite the liability, including strict liability, of defendants to the United States, all as alleged in this verified Complaint, on information and belief defendants KLAWOCK OCEANSIDE, INC. and LAURANCE E. LANG, in breach of law, have, instead of discharging debts owed to the United States, transferred, sold, spun off, and assigned assets so as to prejudice and cause irreparable harm to the United States.

63.     Despite the liability, including strict liability, of defendants to the United States, all as alleged in this verified Complaint, on information and belief defendants KLAWOCK OCEANSIDE, INC. and LAURANCE E. LANG, in breach of law, including, but not limited to, may hereafter transfer, sell, spin off, and assign, or attempt to transfer, sell, spin off, and assign their assets, including proceeds of insurance, so as to prejudice and cause irreparable harm to the United States.

64.     All such prior and future actions as alleged in the foregoing paragraphs have caused damages, and will cause damages, to the United States in an amount to be established according to proof at trial.

//

65. All such future actions as alleged in the foregoing paragraphs will continue to cause irreparable harm to the United States. Pursuant to law and statute, defendants KLAWOCK OCEANSIDE, INC. and LAURANCE E. LANG and their officers, servants, employees, representatives, agents, fiduciaries, or other individuals and entities acting on their behalf or with their authorization, are required to discharge their foregoing debt to the United States prior to discharging any other debt or payment.

66. To the extent that defendants KLAWOCK OCEANSIDE, INC. and LAURANCE E. LANG, and/or their officers, servants, employees, representatives, agents, fiduciaries, or other individuals and entities acting on their behalf or with their authorization, have discharged claims or debts to any other person or entity other than the United States, or in the future discharge claims or debts to any person or entity other than the United States in contravention of, inter alia, 31 U.S.C. § 3713, defendants KLAWOCK OCEANSIDE, INC. and LAURANCE E. LANG, and/or their officers, servants, employees, representatives, agents, fiduciaries, or other individuals and entities acting on their behalf or with their authorization, are liable to the United States for the amount of any such payments.

67. With respect to any payments in contravention of 31 U.S.C. § 3713, and pursuant to 31 U.S.C. § 3713(b), any and all officers, servants, employees, representatives, agents, fiduciaries, or other individuals and entities making such payments are personally liable to the United States for the amount of any such payments.

//

//

//

68. The United States reserves the right to amend this Complaint to add additional claims, causes of action, and parties, including , but not limited to, in their individual capacity, any and all officers, servants, employees, representatives, agents, fiduciaries, or other individuals and entities who, in contravention of 31 U.S.C. § 3713(a) and (b), have already discharged, or in the future discharge, claims or debts to any person or entity other than the United States.

**WHEREFORE**, the United States of America prays as follows:

1. That United States of America be granted judgment against KLAWOCK OCEANSIDE, INC., LAURANCE E. LANG SAFE HARBOR POLLUTION INSURANCE GROUP *in personam*, pursuant to the complaint of the United States herein;

2. That the United States of America be granted declaratory judgment against KLAWOCK OCEANSIDE, INC., LAURANCE E. LANG and SAFE HARBOR POLLUTION INSURANCE GROUP *in personam*, for removal costs or damages binding on any subsequent action or actions to recover further removal costs or damages, plus interest, costs, disbursements, and attorneys' fees;

3. The United States expressly reserves the right to amend this complaint to add parties and/or causes of action, as may be necessary;

4. For such other relief as the Court deems just and proper in the premises.

Dated: June 12, 2018

BRYAN SCHRODER
Acting United States Attorney
RICHARD POMEROY
Assistant United States Attorney
Chief, Civil Division

CHAD A. READLER
Acting Assistant Attorney General
R. MICHAEL UNDERHILL
Attorney in Charge, West Coast Office
Torts Branch, Civil Division

s/Eric Kaufman-Cohen
ERIC KAUFMAN-COHEN
Assistant Attorney in Charge, West Coast Office
Torts Branch, Civil Division
U.S. Department of Justice

Of Counsel
HELKEI HEMMINGER
National Pollution Funds Center
United States Coast Guard

Attorneys for Plaintiff
United States of America

VERIFIED COMPLAINT 16 Case No.:

## VERIFICATION

Eric Kaufman-Cohen says:

I am one of the attorneys for plaintiff, United States of America, herein, and make this verification by authority for and on its behalf; I have read the foregoing Complaint, know the contents thereof, and from information officially furnished to me believe the same to be true.

I verify under penalty of perjury, in accordance with 28 U.S.C. § 1746, that the foregoing is true and correct.

Dated: June 12, 2018                      s/Eric Kaufman-Cohen
                                                        ERIC KAUFMAN-COHEN